IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DONNA MONTALBANO,        ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| v.                                              ) | CASE NO. 1:11-cv-600-TFM |
| ) | [wo] |
| MICHAEL J. ASTRUE,        ) | |
| Commissioner of Social Security   ) | |
| ) | |
| Defendant.    ) | |

**MEMORANDUM OPINION AND ORDER**

Donna Montalbano ("Plaintiff" or "Montalbano") originally applied for supplemental security income under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1382 *et seq.*, on January 14, 2009 alleging that she became disabled on that date. (Tr. 186-189). After being denied, Montalbano timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on November 23, 2010. (Tr. 13-34). Montalbano subsequently petitioned for review to the Appeals Council who rejected review of Montalbano 's case on June 13, 2011. (Tr. 1-6). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court REVERSES and REMANDS the Commissioner's decision.

## I. NATURE OF THE CASE

Montalbano seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The Court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id*.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d

842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III.  STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

> in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff testified that she last worked in January 2009 at Burger King and she left the job because of pain in her feet and legs. (Tr. 41-42). She said that she is unable to work due to pain in her legs, back pain, shoulder pain, asthma, and depression. (Tr. 42-

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

43, 47). Plaintiff further testified that she sees Dr. Glen A. Roberts, D.O., her treating physician once a month and that he prescribes Lortab for pain, as well as other medication for her cholesterol, blood pressure and nerves. (Tr. 44). She testified that she takes Lortab two to three times a day for pains which she describes as located "down in the bottom of my legs." (Tr. 42). Upon further questioning she described the location of her back pain as "down in the lower part . . . where my tail bone has been broke." (Tr. 43). Plaintiff also testified that after a motor vehicle accident in May, 2010, her neck and back issues became worse. (Tr. 57).

The ALJ found that the Plaintiff's "mild major depressive disorder, generalized anxiety disorder, polysubstance abuse not in complete remission, and fibromyalgia and arthritic degeneration in multiple joints, notably in the shoulders and neck" were "severe" impairments (Tr. 18, Finding No. 2), but that these impairments did not meet or medically equal any of the listed impairments in 20 C.F.R., pt. 404 subpt. P, app. 1 (Tr. 19, Finding No. 3). The ALJ also found Plaintiff's subjective allegations of pain and functional limitations were not entirely credible. (Tr. 23). The ALJ found that Plaintiff retained the residual functional capacity to perform a range of light work.[5] (Tr. 22, Finding No. 4). Although Plaintiff had no past relevant work (Tr. 28, Finding No. 5), the ALJ determined there were a significant number of jobs in the national economy Plaintiff could perform, such as laundry worker, hand packager, or textile folder (Tr. 29, Finding No. 10). As a

---

[5] Light work involves lifting no more than 20 pounds at a time (with frequent lifting or carrying of objects weighing up to 10 pounds), and standing or walking, off and on, for a total of approximately six hours in an eight-hour day. *See* 20 C.F.R. § 416.967(b);Social Security Ruling (SSR) 83-10, 1983 WL 31251 at *5-6.

result, the ALJ determined the Plaintiff was not disabled as defined by the Act. (Tr. 20, Finding No. 9).

## V.  MEDICAL HISTORY

Records from Dr. Roberts are the primary medical records before this Court pertaining to Plaintiff's pain arising from musculoskeletal impairments.[6]  Dr. Robert's records are divided into the following dates: September 29, 2008; November 20, 2008; January 15, 2009; February 16, 2009; February 1, 2010; March 2, 2010; April 13, 2012; and May 17, 2010.  However, they appear to include numerous appointment and treatment records under each heading.  Also, Dr. Roberts completed a "pain assessment" for each of these record segments.  (Tr. 473-623).  It is difficult for the court to determine exactly how many times Plaintiff saw Dr. Roberts.  Plaintiff testified at the time of the hearing before the ALJ that she was seeing Dr. Roberts once a month.  (Tr. 44).

It is clear after thorough review of the record that Plaintiff consistently complained of "muscle ache and tenderness in the legs and arms" (Tr. 473; see also, 475, 480, 492, 505, 520 535, 548, 553, 567, 573, 590, 603, 618) and "muscle and joint ache with back tenderness".  (Tr. 473; see also, 475, 480, 492, 505, 520, 535, 548, 553, 567, 573, 590, 603, 618).  Also, Plaintiff complained intermittently of "fatigue with weakness and body ache" in late 2008 and early 2009.  (Tr. 364, 379, 394).  The 2010 medical records from Dr. Roberts record no continued complaints of fatigue.  (Tr. 546-623).

---

[6] The record also shows that on March 9, 2009, Plaintiff underwent a radiologic examination consult. (Tr. 420-427).  That examination showed "no significant abnormality" of the chest (Tr. 420); a possible "slight fracture" of the coccyx, (Tr. 425); "no abnormality" of the pelvis, *id..;* "no abnormality" of the left shoulder, *id.;* and "[n]o disk space narrowing, subluxation or acute fractures" of the lumbar spine. (Tr. 426).

Early on in her treatment, Dr. Roberts noted Plaintiff has "arthritis with joint pain" (Tr. 477) and he continued to document this condition throughout his treatment notes. (Tr. 592). In April of 2010, Dr. Roberts stated for the first time that Plaintiff "has Fibromyalgia with muscle pain." (Tr. 590). In May, 2010, Dr. Roberts again noted Plaintiff had Fibromyalgia. (Tr. 611). Also, Dr. Roberts noted that on May 3, 2010, Plaintiff suffered a "Motor Vehicle Accident with Neck and Low Back Injury." (Tr. 603). With respect to the pain assessments, Dr. Roberts consistently noted Plaintiff experienced an average monthly pain rating of an eight on a scale of one to ten, with ten being the highest level of pain. (Tr. 373-376; 388-391; 411-415; 483-487; 559-563; 578-581; 598-602, 619-623). He also consistently noted that the medications she was taking gave her nearly complete relief – a nine on a scale of one to ten. *Id.* He further noted that the medications caused little or no side effects, but that her pain affected her daily functions on a level of eight or above on scale of one to ten. *Id.*

## VI. ISSUE

Montalbano raises a single issue for judicial review:

Whether the ALJ failed to properly consider Montalbano's severe impairment of fibromyalgia. (Tr. 18).

## VI. ANALYSIS

Plaintiff argues that the ALJ failed to properly consider Montalbano's severe impairment of fibromyalgia. The ALJ found that Plaintiff had severe impairments of "fibromyalgia[7] and arthritic degeneration in multiple joints". (Tr. 18). At step four the

---

[7]A diagnosis of fibromyalgia requires a specific tender point examination, which shows pain in eleven of eighteen tender point sites including the following areas -- arms (elbows), buttocks,

ALJ found that the Plaintiff "has the residual functional capacity to perform less than the full range of light work." (Tr. 22) He specifically found that she "can lift and carry 20 pounds occasionally and 10 pounds frequently; and stand/walk for 6 hours and sit for 6 hours over an 8-hour workday. She is further restricted physically to only occasional overhead reaching and pushing/pulling with the upper extremities." (Tr. 22).

At step four, the ALJ also considered the Plaintiff's symptoms associated with fibromyalgia. In so doing, the ALJ generally summarized Dr. Robert's medical records and noted Plaintiff's complaints of "joint pain and tenderness" beginning in January 15, 2009. (Tr. 25). The ALJ also noted that Dr. Robert's records demonstrated that Plaintiff suffered from "an unstable back with degenerative changes". (Tr. 26). The ALJ acknowledged Dr. Roberts' diagnosis of "a variety of severe musculoskeletal impairments including severe degenerative changes" but found that "the objective medical signs and radiological imaging" are inconsistent with Dr. Roberts' findings. (Tr. 26).

The ALJ also noted that Dr. Roberts' February, 2010[8] medical records indicate that "claimant had no muscle tenderness, myotis, or loss of range of motion." (Tr. 26). The ALJ, also recognized that "[d]espite allegations of a debilitating degree of pain, there is a lapse in records of treatment between February 2009 and the following year." (Tr. 27). Moreover, the ALJ noted that "the planned method of treatment prescribed by Dr.

---

chest, knees, lowerback, neck, rib cage, shoulders, thighs. *See* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001463.

[8] The ALJ actually refers to Plaintiff's February, 2009 records for this diagnosis. But the court's careful review of the record demonstrates the diagnosis was made in February, 2010 and again in March, 2010. (Tr. 551, 570).

Roberts remained the same regardless of the impairments and conditions assessed." (Tr. 26). Further, the ALJ recognized that these treatment recommendations generally included allowing for adequate rest, drinking plenty of fluids, avoiding heavy lifting or further strain to the back, taking medication as prescribed and following up for a recheck. (Tr. 26).

Thus, the ALJ concluded that "the assessed changes in claimant's condition as well as the severity of pain noted are inconsistent with the consistency of recommendations made by . . . [Dr. Roberts], which continued to be conservative in nature, and failed to reflect substantial debilitating limitations in her capacity to function." (Tr. 26). The ALJ further concluded that the claimant's lengthy treatment history which reflects "substantial lapses" and "a nature of treatment that has remained conservative" is "consistent with a residual [functional] capacity accommodated by the above limitations to below the full light level, with the additional manipulative and mental restrictions set forth." (Tr. 27). Specifically, the ALJ concluded that Plaintiff has the residual functional capacity to perform less than the full range of light work." (Tr. 22). Finally, the ALJ concluded that the claimant has not been disabled since January 14, 2009 through the date of application. (Tr. 29).

Fibromyalgia poses "unique" problems in the context of a Social Security case. *Rutledge v. Barnhart,* 391 F. Supp.2d 1057, 1062 (N.D. Ala. 2005) citing *Sarchet v. Chater,* 78 F.3d 305 (7th Cir. 1996). In *Sarchet,* Chief Judge Posner described fibromyalgia as follows:

> [F]ibromyalgia, also known as fibrositis -a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. . . . Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and-the only symptom that discriminates between it and other diseases of a rheumatic character- multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch . . . Some people may have such a severe case of fibromyalgia as to be totally disabled from working,. . . . but most do not and the question is whether [the plaintiff] is one of the minority.

*Id*. at 1062 (citations omitted).

This court has thoroughly and carefully reviewed Dr. Robert's medical records. (Tr. 362-623). The court specifically notes the internal inconsistencies in the record concerning whether the Plaintiff continuously suffered from "muscle tenderness". Dr. Roberts repeatedly recorded Plaintiff's complaints in the record of "muscle ache and tenderness in the legs and arms" and "muscle and joint ache with back tenderness." (Tr. 473; see also, 475, 480, 492, 505, 520 535, 548, 553, 567, 573, 590, 603, 618). However, Dr. Roberts also notes on at least two occasions that "[t]he patient has no muscle tenderness." (Tr. 551 and 570). Most importantly, Dr. Roberts completed eight separate pain assessments on Plaintiff where he consistently noted that Plaintiff experienced an average monthly pain rating of an eight on a scale of one to ten. (Tr. 373-376; 388-391; 411-415; 483-487; 559-563; 578-581; 598-602, 619-623). He also consistently noted that the medications she was taking gave her nearly complete relief – a nine on a scale of one

to ten. *Id[9]*. He further noted that the medications caused little or no side effects, but that her pain affected her daily functions on a level of 8 or above on a scale of 1 to 10. *Id.* In addition to the other record inconsistencies, the court is particularly troubled by the obvious inconsistency between the relief the pain medication reportedly gave Plaintiff and the lack of any side effects and the degree to which Dr. Roberts reported that Plaintiff's pain affected her daily functions.

Plaintiff cites two cases in support of her position that she is disabled due to her severe impairment of fibromyalgia. First, in *Reliford v. Barnhart,* the court reversed the Commissioner's decision and found the treating rheumatologist's opinions on claimant's pain due to fibromyalgia were supported by substantial evidence. The court specifically found that a proper diagnosis of fibromyalgia satisfies the pain standard. 444 F. Supp. 1182, 1187 (N.D. Ala. 2006). Indeed, the court concluded in *Reliford* that a proper diagnosis of fibromyalgia was made due to the treating rheumatologist's finding of "characteristic tender points." *Id.* at 1187-1189. Similarly, in *Rutledge,* the court also found that Plaintiff met the standard for disabling pain because she had fibromyalgia, which had been diagnosed by her treating physician using "currently accepted clinical methodology" and she had undergone "trigger point injections" performed by a neurosurgeon. 391 F.Supp.2d at 1063.

This court, however, is unable to determine whether the Commissioner's decision is supported by substantial evidence because the ALJ failed to resolve inconsistencies in the record. Specifically, the ALJ failed to resolve the inconsistency between the relief the

---

[9] Dr. Roberts' medical records reflect that during his treatment of Plaintiff, she took Lortab, Soma, Diazepam, and Zanaflex.

pain medication reportedly gave to Plaintiff and the lack of any side effects and the degree to which Dr. Roberts reported that Plaintiff's pain continued to affect her daily functions.

An administrative law judge has a duty to develop a full and fair record. *Kelley v. Heckler,* 761 F. 2d 1538 (11th Cir. 1985). It is error for the ALJ to fail to obtain additional testing or otherwise develop the evidence, if that information is necessary to make an informed decision. *See Holladay v. Bowen,* 848 F. 2d 1206, 1209 (11th Cir. 1988). Thus, the Court can not adequately determine whether the ALJ properly considered Montalbano's severe impairment of fibromyalgia. Indeed, because the ALJ failed to resolve the inconsistencies within Dr. Roberts' records, this Court concludes that this action is due to be reversed and remanded to the Commissioner for a consultative examination to be conducted on Plaintiff by a rheumatologist or other specialist for the purpose of determining whether Plaintiff indeed suffers from fibromyalgia. *See, Reeves v. Heckler,* 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (the Commissioner's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision.).

## VII. CONCLUSION

Accordingly, the court concludes that this case is due to be reversed and remanded to the Commissioner for further proceedings consistent with this opinion. It is ORDERED that in accordance with *Bergen v. Comm'r, of Soc. Sec.,* 454 F. 3 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have **ninety (90)** days after she receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406

(b). *See also Blitch v. Astrue,* 261 Fed. Appx. 241, 242 fn. 1 (11th Cir. 2008).

A separate order shall accompany this opinion.

DONE this 31st day of August, 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE